## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES S. CASSANO**<br>**117 Graham Way**<br>**Devon, PA 19333-1434** | : <br> : <br> : <br> : | **CIVIL ACTION**<br><br>**No. _____** |
| **Plaintiff,** | : <br> : | |
| **v.** | : <br> : | **JURY TRIAL DEMANDED** |
| **CHINA CABLECOM HOLDINGS, LTD.**<br>**27 Union Square West, Suite 501-502**<br>**New York, NY 10003** | : <br> : <br> : <br> : | |
| **Defendant.** | : | |

## COMPLAINT

Plaintiff James C. Cassano brings this action against Defendant China Cablecom Holdings, Ltd. for breaching a certain Consulting Agreement between Plaintiff and Defendant. Specifically, Defendant violated the Consulting Agreement by unilaterally terminating it without cause and failing to make payments to Plaintiff as required by the agreement. Accordingly, Plaintiff is entitled to money damages.

### Parties

1.    Plaintiff James C. Cassano is a citizen of the Commonwealth of Pennsylvania residing at 117 Graham Way, Devon, Pennsylvania.

2.    Defendant China Cablecom Holdings, Ltd. is a British Virgin Islands company with a principal place of business in the United States at 27 Union Square West, Suite 501-502, New York, New York.

## Jurisdiction and Venue

3.     This Court has subject matter jurisdiction based on complete diversity of the parties and an amount in controversy in excess of the statutory jurisdiction limit and the local arbitration limit of $150,000.00.   *See* 28 U.S.C. § 1332; Local Rule 53.2.

4.     As set forth more fully below, at all times relevant hereto Defendant regularly conducted business in the Eastern District of Pennsylvania.

5.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in the Eastern District of Pennsylvania.   Additionally, Defendant is a lessee of real property in the Eastern District of Pennsylvania.

## Factual Background

6.     Defendant was the Jaguar Acquisition Corporation ("Jaguar"), which was a Delaware corporation with a principal place of business in Conshohocken, Pennsylvania.

7.     Plaintiff served on Jaguar's Board of Directors, and was Jaguar's Executive Vice President, Chief Financial Officer and Corporate Secretary.

8.     On or about April 8, 2008, Jaguar purchased China Cablecom Ltd.

9.     Subsequent to the purchase, Jaguar became Defendant, China Cablecom Holdings, Ltd., and established itself as a British Virgin Island company.

10.     Subsequent to the purchase, Plaintiff remained associated with Defendant, including, *inter alia*, in an advisory position to its board of directors, pursuant to a certain Consulting Agreement, "Exhibit A" hereto.

11.     The term of the Consulting Agreement is three years beginning on the date of Jaguar's purchase of China Cablecom Ltd., *i.e.*, April 8, 2008.  (Ex. A at ¶ 2(a)).

12.     The Consulting Agreement requires Defendant to pay Plaintiff $10,000.00 per month.  (Ex. A at ¶ 5).

13.     Defendant may unilaterally and without Plaintiff's consent terminate the Consulting Agreement for cause only.

14.     Specifically, Defendant may unilaterally terminate the Consulting Agreement only if it "reasonably determines that actions or inactions of [Plaintiff] in the performance of (or failure to perform) his duties under this Agreement are negligent, constitute willful misconduct or are materially injurious to the business affairs of [Defendant]."  (Ex. A at ¶ 2(b)).

15.     From April 8, 2008 though June 2009, Plaintiff provided consulting services to Defendant pursuant to the Consulting Agreement to the benefit of Defendant.

16.     Plaintiff performed the majority of the consulting services within the Eastern District of Pennsylvania.

17.     Likewise, from April 2008 through May 2009, Defendant made the required payments to Plaintiff in the Eastern District of Pennsylvania.

18.     On June 9, 2009, Defendant notified Plaintiff that it was unilaterally ending the Consulting Agreement and terminating the required payments to Plaintiff without cause.

19.     Defendants only stated reason for ending the Consulting Agreement and terminating the payments was due to Defendant's alleged "major restructuring."

20.     Importantly, Defendant did not unilaterally end the Consulting Agreement and terminate the required payments based on any negligence, willful misconduct and/or materially injurious conduct of Plaintiff.  Indeed, Plaintiff has never engaged in any negligence, willful misconduct and/or materially injurious conduct in connection with the business affairs of Defendant.

21.     Additionally, Defendant has failed to make payments due to Plaintiff under the Consulting Agreement.

22.     Based on the foregoing, Defendant breached the Consulting Agreement.

## COUNT I - BREACH OF CONTRACT

23.     Plaintiff incorporates the foregoing paragraphs as if fully set forth below.

24.     The Consulting Agreement constitutes a binding and enforceable contract between Plaintiff and Defendant.

25.     As set forth above, Defendant breached the Consulting Agreement by unilaterally terminating the contract without cause and by failing to make payments to Plaintiff as required by the Consulting Agreement.

26.     Defendant's breach of the Consulting Agreement has proximately caused Plaintiff to suffer significant damages.

27.     Based on the foregoing, Plaintiff is entitled to judgment in his favor and against Defendant.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant in an amount in excess of $150,000 plus applicable interest, late charges, attorney's fees and other costs, and grant such other relief in Plaintiff's favor as this Court deems appropriate.

OF COUNSEL:

ELLIOTT GREENLEAF &
        SIEDZIKOWSKI, P.C.

Respectfully submitted,

Brian R. Elias
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000

Attorneys for Plaintiff James C. Cassano

**EXHIBIT A**

<u>CONSULTING AGREEMENT</u>

CONSULTING AGREEMENT (this "<u>Agreement</u>"), by and between CHINA CABLECOM HOLDINGS, LTD., a BVI business company (the "<u>Company</u>"), and JAMES S. CASSANO (the "<u>Consultant</u>").

<u>W I T N E S S E T H</u>:

The Company desires to engage the Consultant to render consulting services to it and the Consultant is willing to provide such consulting services to the Company, on the terms and conditions herein provided.

In order to effect the foregoing, the parties hereto wish to enter into a consulting agreement on the terms and conditions set forth below. Accordingly, in consideration of the premises and the respective covenants and agreements of the parties herein contained, and intending to be legally bound hereby, the parties hereto agree as follows:

1.   <u>Engagement</u>. The Company hereby agrees to engage the Consultant to provide consulting services to the Company pursuant to the terms and conditions of this Agreement and the Consultant hereby agrees to provide such services to the Company.

2.   <u>Term</u>.

(a)   The term of this Agreement shall commence upon the consummation of the "Business Combination" (as defined in the Agreement and Plan of Merger dated as of October 10, 2007, by and among Jaguar Acquisition Corporation, China Cablecom Ltd. and Clive Ng) and, unless sooner terminated pursuant to paragraph (b) of this Section 2, shall terminate on the third anniversary thereof (the "<u>Term</u>").

(b)   The Company and the Consultant may agree to terminate this Agreement at any time in writing. In addition, the Company may terminate this Agreement unilaterally and without the Consultant's consent if the Company reasonably determines that the actions or inactions of the Consultant in the performance of (or failure to perform) his duties under this Agreement are negligent, constitute willful misconduct or are materially injurious to the business affairs of the Company.

(c)   Upon the termination of this Agreement pursuant to paragraph (b) of this Section 2, neither the Company nor the Consultant shall have any liability or obligation to the other, except for (i) the obligation of the Company to pay the Consultant any due and payable consulting fee pursuant to Section 5 for his consulting services rendered to the Company prior to the termination of this Agreement, (ii) the obligation of the Company to reimburse expenses incurred by the Consultant during the Term pursuant to Section 6 and (iii) the restrictive covenant obligation of the Consultant pursuant to Section 7, all of which shall survive such termination.

3.   <u>Consulting Services</u>. During the Term, the Consultant shall provide such consulting services to the Company as the Company shall agree upon mutually with the

Consultant, including but not limited to those set forth on Exhibit A hereto (which Exhibit may be amended in writing as agreed to by the Company and the Consultant).

4.    Nature of Relationship. The Consultant shall perform his consulting services hereunder in the capacity of an independent contractor and not as an employee of the Company. Any provision to the contrary in this Agreement notwithstanding, the Consultant shall have no power or authority to execute or otherwise enter into any agreement on behalf of, or in any way to bind, the Company. The Consultant shall not be considered as being employed by the Company for any purpose, including without limitation, with respect to employee benefits generally applicable to the Company's employees. The Company shall carry no workers' compensation insurance or health or accident insurance for the Consultant. The Company shall pay no amounts on account of the Consultant for purposes of Social Security, unemployment insurance or federal or state withholding taxes and the Company shall not provide any other contributions or benefits for the Consultant which might be expected in the context of an employer-employee relationship.

5.    Compensation. The Company shall pay the Consultant a monthly consulting fee equal to Ten Thousand Dollars ($10,000.00) with each such monthly payment being payable on the first business day of the Company in each month during the Term.

6.    Expenses. During the term of this Agreement, the Company shall, upon receipt from the Consultant of appropriate documentation consistent with the Company's regular corporate policies regarding expense reimbursement, reimburse the Consultant for his ordinary and customary expenses incurred in performing his consulting services hereunder, including expenses for non-commutation travel, all in accordance with the Company's regular corporate policies regarding expense reimbursement; provided, however, that if the Consultant is to incur extraordinary expenses, the Company shall not reimburse such expenses unless the Consultant obtains the Company's consent thereto prior to incurring such expenses.

7.    Restrictive Covenant.

(a)    Reasonable Covenant. It is expressly understood by and between the Company and the Consultant that the covenant contained in this Section 7 is an essential element of this Agreement and that, but for the agreement by the Consultant to comply with the below covenant and thereby not to diminish the value of the organization and goodwill of the Company or any affiliate or subsidiary of the Company, including relations with their employees, clients, customers and accounts, the Company would not enter into this Agreement. The Consultant agrees that the below covenant is reasonable and proper.

(b)    Nondisclosure of Confidential Information. The Consultant shall keep secret and confidential and shall not disclose to any third party in any fashion or for any purpose whatsoever, any information regarding this Agreement, or any other information regarding the Company or its affiliates or subsidiaries which is not available to the general public, and/or not generally known outside the Company or any such affiliate or subsidiary, to which he has or shall have had access at any time during the course of his consulting engagement with the Company, including, without limitation, any information relating to the Company's (and its affiliates' or subsidiaries'):

NY677941.3
210803-10001

2

(i)    business, operations, plans, strategies, prospects or objectives;

(ii)    products, technologies, processes, specifications, research and development operations and plans;

(iii)    customers and customer lists;

(iv)    distribution, sales, service, support and marketing practices and operations;

(v)    financial condition and results of operations;

(vi)    operational strengths and weaknesses; and

(vii)    personnel and compensation policies and procedures.

Notwithstanding the foregoing provisions of this Section 7, the Consultant may discuss this Agreement with the members of his immediate family and with his personal legal and tax advisors and may disclose the existence of his consulting relationship with the Company to any third party.

(c)    Specific Performance. Without intending to limit the remedies available to the Company or its affiliates or subsidiaries, the Consultant hereby agrees that damages at law would be an insufficient remedy to the Company or its affiliates or subsidiaries in the event that the Consultant violates any of the provisions of Section 7(b), and that, in addition to money damages, the Company or its affiliates or subsidiaries may apply for and, upon the requisite showing, have injunctive relief in any court of competent jurisdiction to restrain the breach or threatened breach of or otherwise to specifically enforce the covenant contained in Section 7(b).

8.    Non-Assignability. Except with the written consent of both parties, neither the Consultant nor the Company shall have any right to anticipate, alienate, sell, assign, transfer, pledge, encumber or otherwise dispose of any right, interest, benefit or payment under this Agreement and any attempted anticipation, alienation, sale, assignment, transfer, pledge, encumbrance or other disposition of any of such rights, interest, benefits or payments contrary to the provisions hereof shall be null and void and without effect. All rights, interests, benefits and payments under this Agreement shall, to the maximum extent permitted by law, be exempt from the claims of any creditor or other person prior to the actual receipt thereof by the person entitled to receive the same hereunder. Notwithstanding anything to the contrary contained in this Section 8, the Consultant's rights to receive payments hereunder may be transferred by will or the laws of descent and distribution.

9.    Parties Bound. The rights and obligations of the Company under this Agreement shall inure to the benefit of and shall be binding upon its affiliates, subsidiaries, successors and assigns.

10.    Notice. For the purposes of this Agreement, notices, demands and all other communications provided for herein shall be in writing and shall be deemed to have been duly

given when delivered or (unless otherwise specified) mailed by United States certified or registered mail, return receipt requested, postage prepaid, addressed as follows:

> If to the Consultant:
> James S. Cassano
> Jaguar Capital Partners
> 161 Washington Street Suite 1050
> Conshohocken, PA 19428

> If to the Company:
> China Cablecom Holdings, Ltd.
> Clive Ng, Chairman
> 17 State Street Suite 1600
> New York, NY 10004

or to such other address as either party may have furnished to the other in writing in accordance herewith except that notices of change of address shall be effective solely upon their receipt.

11.   Severability.  If any provision of this Agreement (or part hereof) shall be held to be invalid or unenforceable under applicable law, the invalidity or unenforceability thereof shall not affect the validity or enforceability of the remaining provisions hereof and each such other provision (or the remainder of such provision) shall, to the full extent consistent with applicable law, continue in full force and effect.

12.   Books and Records.  The Consultant hereby agrees that all books and records relating in any manner to the business of the Company or that of its affiliates or subsidiaries, and all other files, books and records and other materials owned by the Company or its affiliates or subsidiaries or used by them in connection with the conduct of their businesses, whether prepared by the Consultant or otherwise coming into the Consultant's possession, shall be the exclusive property of the Company or its affiliates or subsidiaries regardless of which party prepared the original material, books or records. All such books, records and other materials shall be returned immediately to the Company or its affiliates or subsidiaries upon the termination of the Consultant's services hereunder.

13.   Successors. Notwithstanding anything to the contrary contained in Section 8, this Agreement cannot be assigned by the Company or its affiliates or subsidiaries except that it shall be binding automatically on any successors and assigns of all or substantially all of the business and/or assets of the Company (whether direct or indirect, by purchase, merger, consolidation or otherwise). This Agreement and all rights of the Consultant hereunder shall inure to the benefit of and be enforceable by the Consultant's personal or legal representatives.

14.   Governing Law. The validity, interpretation, construction and performance of this Agreement shall be governed by applicable BVI law.

15.   Amendments. No provision of this Agreement may be modified, waived or discharged unless such waiver, modification or discharge is agreed to in writing signed by the Consultant and such officer of the Company as may be specifically designated for such purpose by the Company. No waiver by either party hereto at any time of any breach by the other party

hereto of, or compliance with, any condition or provision of this Agreement to be performed by such other party shall be deemed a waiver of similar or dissimilar provisions or conditions at the same or at any prior or subsequent time. No agreements or representations, oral or otherwise, express or implied, with respect to the subject matter hereof have been made by either party which are not set forth expressly in this Agreement.

16.   Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument.

17.   Entire Agreement. This Agreement sets forth the entire agreement of the parties hereto in respect of the subject matter contained herein and supersedes all prior agreements, promises, covenants, arrangements, communications, representations and/or warranties, whether oral or written, by any officer, employee or representative of any party hereto. The parties hereto hereby acknowledge that no agreement or representation, oral or otherwise, express or implied, with respect to the subject matter hereof has been made by either party which is not set forth expressly in this Agreement.

18.   Hold Harmless. The Company hereby agrees to hold harmless the Consultant from any liability arising out of the Consultant's performance under this Agreement to the fullest extent permitted by law for a director or officer of the Company, except to the extent of the Consultant's negligence or willful misconduct.

19.   Survival. The obligations of the parties hereto contained in Sections 7 and 18 shall survive the termination of this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the Effective Date set forth in Section 2(a) hereof.

CHINA CABLECOM HOLDINGS, LTD.

By: _____     _____
       Name:                                              Date
       Title:


JAMES S. CASSANO


_____     _____
                                                              Date

hereto of, or compliance with, any condition or provision of this Agreement to be performed by such other party shall be deemed a waiver of similar or dissimilar provisions or conditions at the same or at any prior or subsequent time. No agreements or representations, oral or otherwise, express or implied, with respect to the subject matter hereof have been made by either party which are not set forth expressly in this Agreement.

16.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument.

17.    Entire Agreement. This Agreement sets forth the entire agreement of the parties hereto in respect of the subject matter contained herein and supersedes all prior agreements, promises, covenants, arrangements, communications, representations and/or warranties, whether oral or written, by any officer, employee or representative of any party hereto. The parties hereto hereby acknowledge that no agreement or representation, oral or otherwise, express or implied, with respect to the subject matter hereof has been made by either party which is not set forth expressly in this Agreement.

18.    Hold Harmless. The Company hereby agrees to hold harmless the Consultant from any liability arising out of the Consultant's performance under this Agreement to the fullest extent permitted by law for a director or officer of the Company, except to the extent of the Consultant's negligence or willful misconduct.

19.    Survival. The obligations of the parties hereto contained in Sections 7 and 18 shall survive the termination of this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the Effective Date set forth in Section 2(a) hereof.

CHINA CABLECOM HOLDINGS, LTD.

By: _____        _____
       Name:                                                              Date
       Title:


JAMES S. CASSANO

_____        _____
                                                                         Date

Consulting Services

The Consultant shall assist the Company's management, Board of Directors and Board committees in regard to the Company's (i) financial reporting, (ii) SEC filings (iii) coordination with its auditors, (iv) governance issues and (vi) any other activities for which his assistance is reasonably requested by the Company's management, Board of Directors or any Board committee.  In addition, the Consultant shall attend all Company Board of Director meetings as an observer.